## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | |
|---|---|
| ALEXANDRA BARROW-RIVAS,<br><br>Plaintiff,<br><br>v.<br><br>USA CARSHIP INC., a Georgia Corporation,<br><br>Defendant. | Judge:   2:23-CV-279-RWS<br><br>Jury Demand Endorsed Hereon<br><br>**Complaint - Class Action** |

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Alexandra Barrow-Rivas ("Plaintiff") brings this Complaint and the following cause of action against Defendant USA Carship Inc. ("Carship" or "Defendant") alleging as follows:

### INTRODUCTION

1.  This case involves a telemarketing campaign by Carship who sent text messages and made phone calls to market its services by contacting numbers repeatedly after 9:00 PM and after repeated requests from the recipients to be added to Defendant's Internal Do-Not-Call registry, a plain violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. (hereinafter referred to as the "TCPA").

1

2. The recipients of these illegal calls, which include Plaintiff and the Proposed Class, are entitled to damages under the TCPA, and because telemarketing campaigns send text messages *en masse*, the appropriate vehicle for recovery is a class action lawsuit.

## PARTIES

**Plaintiff Alexandra Barrow-Rivas**

3. Plaintiff is an individual residing in Monroe County, Florida.

**Defendant USA Carship Inc.**

4. Defendant USA Carship Inc. is a domestic corporation organized under the laws of Georgia with its principal place of business located at 6595 Pheasant Pl., Cumming, Georgia 30028. Defendant can be served via registered agent, Saba Ahmed, at its principal place of business.

## JURISDICTION AND VENUE

5. Under 47 U.S.C. § 227 *et seq.*, this Court has original jurisdiction over Plaintiff's FLSA claims because they raise a federal question of law.

6. Venue is proper under 28 U.S.C. § 1391(b) because Defendant' principal place of business is located at 6595 Pheasant Pl., Cumming, Georgia 30028, and the events giving rise to Plaintiff's cause of action occurred in the United States District Court for the Northern District of Georgia.

## TCPA BACKGROUND

7. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaint about robocalls— 3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. Lexis 3544, at *5 (2020).

8. Regulations implementing the TCPA require companies to maintain Internal Do-Not-Call Registries. 47 C.F.R. § 64.1200(d). Once a company receives a request from a consumer not to receive calls, the number must be placed on the company's Company-Specific Do-Not-Call List (the "Internal Do-Not-Call List") within a reasonable time, not to exceed thirty (30) days from the date of the request. *Id*. at § 64.1200(d)(3).

9. It has long been the law that a seller of goods or services can be liable for TCPA violations even if the seller does not directly place or initiate the calls. The provision that establishes a private right of action against an entity that violates the National Do-No-Call Registry restrictions provides that "[a] person who has received more than one telephone call within any twelve (12) month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring an action for damages and injunctive relief. 47 U.S.C. § 227(c)(5) (emphasis

added). Likewise, 47 C.F.R. § 64.1200(d)(3) provides that once a number is added to a company's Internal Do-Not-Call List, the company "on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request."

10. As explained by the FCC, the TCPA and its regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, Mem. Op. & Order, 10 FCC Rcd. 12391, 12937, ¶ 1.

11. The FCC reiterated this principle in 2005, when it stated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules, and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 20 FCC Rcd. 13664, 13667 ¶ 7 (2005).

12. The FCC reaffirmed this in 2013, when it held that (a) a seller may, under principles of apparent authority, actual authority, and ratification, be liable for violations of § 227(c) by third parties, and (b) a seller may also be liable, under the express terms of § 227(c), for calls placed "on behalf of" the seller. *In re Joint Pet. filed by DISH Network LLC*, Declaratory Ruling, 28 FCC Rcd. 6574 (2013).

13.  Industry data shows that the number of robocalls made each month increased form 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

14.  According to the online robocall tracking service "YouMail," 4.5 billion robocalls were placed in July 2023 alone, at a rate of 145.5 million calls per day. [1]

15.  The FCC has received an increased number of complaints about unwanted calls, with over 150,000 complaints in 2020, and over 160,000 complaints in 2021. [2]

16.  "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." [3]

17.  "The FTC receives more complaints about unwanted calls than other Complaints combined." [4]

## FACTUAL ALLEGATIONS

18.  Defendant Carship's website describes the company as "one of the largest auto transport companies in the country . . . ."[5]

---

[1] *See July 2023 Nationwide Robocall Data*, YouMail: Robocall Index, www.robocallindex.com (last visited Aug. 24, 2023).

[2] FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-helpcenter-data.

[3] Tom Wheeler, Cutting off Robocalls (July 22, 2016), statement of FCC chairman.

[4] Staff of the Federal Trade Commission's Bureau of Consumer Protection, In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016)

[5] *About Us*, https://www.usacarship.com/about-us (last visited Dec. 12, 2023).

19. Defendant calls and sends text messages to consumers in order to solicit business for its services.

20. On November 28, 2023, Plaintiff needed to utilize the services of a shipping company and submitted her information on a website to receive quotes from different carriers.

21. Shortly thereafter, Plaintiff secured the services of a company for her shipping needs and no longer required quotes from companies.

22. On November 28, 2023, Plaintiff received a text message from Defendant with a quote in response to her online web submission. Plaintiff did not respond.

23. On November 29, 2023, at 10:20 AM, Plaintiff received another text message from Defendant following up on the November 28, 2023 message.

24. Simultaneously to the text message on November 29, 2023, Plaintiff received a phone call from Defendant, which Plaintiff answered and informed the caller that she no longer required their services and requested that Defendant add her to their internal Do-Not-Call list.

25. On November 30, 2023, at 3:24 PM, Plaintiff again received a text message attempting to solicit her business. Plaintiff did not respond.

26. On December 2, 2023, at 3:13 PM, Plaintiff received another text message attempting to solicit her business, to which, Plaintiff responded "Stop."

27. On December 4, 2023, at 6:08 PM, Plaintiff received a call and text message from Defendant. Plaintiff answered the phone call and again requested that Defendant stop calling, and replied to the text message with the word "Stop."

28. On December 5, 2023, at 6:31 PM, Plaintiff answered another call from Defendant, to which, Plaintiff informed Defendant that if they called her again, she would retain counsel.

29. On December 6, 2023, at 2:23 PM, Plaintiff answered another call from Defendant and immediately requested to speak with a manager. Plaintiff again requested to no longer be contacted by Defendant.

30. By requesting to be added to Defendant's internal DNC list, Plaintiff unequivocally withdrew any consent for Defendant to contact her.

31. However, even though Plaintiff made it clear that she did not wish to receive calls or texts from Defendant, Plaintiff continued receiving calls and text messages from Defendant to her residential line, each one trying to sell her on further services or schedule additional treatments.

32. The following chart shows the calls and text messages that were placed to Plaintiff's personal phone line after she requested to be added to Defendant's internal do-not-call list:

| Date | Time | Calling Number | Type of Contact | Numbers of Contact |
|---|---|---|---|---|
| November 30, 2023 | 3:24 pm | 440-400-2340 | Text Message | 1 |
| December 2, 2023 | 3:13 pm | 440-400-2340 | Text Message | 1 |
| December 4, 2023 | 6:08 pm | 440-400-2340 | Phone Call and Text Message | 2 |
| December 5, 2023 | 6:31 pm | 440-400-2340 | Phone Call and Text Message | 2 |
| December 6, 2023 | 2:22 pm | 440-400-2340 | Phone Call and Text Message | 2 |
| December 6, 2023 | 9:07 pm | 440-400-2340 | 2 Phone Calls | 2 |
| December 7, 2023 | 10:52 pm | 440-400-2340 | 2 Phone Calls | 2 |
| **Total** | | | | 12 |

33.     Between the dates of November 29, 2023, and December 7, 2023, Plaintiff made six (6) requests to be added to Defendant's internal DNC list.

34.     Following Plaintiff's first request to be added to Defendant's internal DNC list on November 29, 2023, Plaintiff received twelve (12) phone calls and text messages from Defendant attempting to solicit Plaintiff's business.

8

35. Following Plaintiff's second request on December 2, 2023, Plaintiff received ten (10) phone calls and text messages from Defendant.

36. Following Plaintiff's third and fourth requests on December 4, 2023, Plaintiff received eight (8) phone calls and text messages from Defendant.

37. Following Plaintiff's fifth request on December 5, 2023, Plaintiff received six (6) phone calls and text messages from Defendant.

38. Following Plaintiff's sixth and final request on December 6, 2023, Plaintiff received four (4) more phone calls, all of which were after 9:00 pm, with two calls being received around 11:00 pm.

39. Defendant, or someone acting on its behalf, violated Plaintiff's privacy by making each of the above referenced unwanted telemarketing text messages, and they constitute a nuisance as they are annoying and harassing. Plaintiff explicitly told Defendant that she did not want to be contacted in any way by Defendant.

40. Plaintiff's first request to stop calling her should have triggered Defendant's obligation under 47 C.F.R. § 64.1200(d) to put her phone number on Defendant's Internal Do-Not-Call List, both under the relevant regulation and under their own internal privacy policies. Defendant, however, failed to take this action and/or failed to enforce its Internal Do-Not-Call List policies. Defendant, therefore, illegally and knowingly continued to contact after she requested the text messages stop.

## **CLASS ALLEGATIONS**

**Internal Do-Not-Call List Class**

41. Plaintiff brings Count I of this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class tentatively defined as:

> All natural persons in the United States who, from December 12, 2019, to the commencement of this litigation, who received more than one telephone solicitation (either phone call or text message) from Defendant after requesting that Defendant cease calling.

42. Excluded from this class definition are employees, officers, directors of Defendant, and attorneys appearing this case, and any judge assigned to hear this action.

43. Each of the persons identified in this Internal Do-Not-Call List has been harmed by the acts of Defendant because their privacy has been violated, they were subject to annoying and harassing calls that constitute a nuisance, and/or they were charged for incoming calls.

44. Plaintiff reserves the right to modify this class definition as she obtains relevant information, including telemarketing call records, through discovery.

**The Action Meets the Requirements to be Certified as a Class**

45. Plaintiff is a member of the proposed class.

46. The proposed Classes can be identified through telephone records and databases used in transmitting the telemarketing calls.

47. <u>Numerosity.</u> The number of Putative Class Members is believed to be in the hundreds or thousands, rendering the classes so numerous that individual joinder of all Class Members is impracticable.

48. <u>Commonality.</u> There are questions of law and fact common to Plaintiff and to the proposed classes, including, but not limited to, the following:

   a. Did Defendant place, or have they placed, telemarketing calls to Plaintiff and the Putative Class Members?

   b. Whether Defendant' conduct violated 47 C.F.R. § 64.1200(d)(3) (the Internal Do-Not-Call List)?

   c. Whether Defendant willfully or knowingly violated 47 C.F.R. § 64.1200(d)(3) (the Internal Do-Not-Call List)?

49. <u>Typicality.</u> Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of the proposed Putative Class's Members'. Plaintiff would only seek individual or actual damages if class certification is denied. In addition, Plaintiff is entitled to relief under the same cause of action and upon the same facts as the other Members of the proposed Putative Class.

50. <u>Adequacy</u>. Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the proposed Putative Class because her interests coincide with, and are not antagonistic to, the interests of the Members of the proposed Putative Class she seeks to represent; she has retained counsel competent and experienced in

such litigation; and she intends to prosecute this action vigorously. Plaintiff and her Counsel will fairly and adequately protect the interests of Members of the proposed Putative Class.

51. <u>Superiority.</u> Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the Members of the proposed Putative Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Liability will be determined based on a common set of facts and legal theories. Willfulness will be determined based on Defendant's conduct and knowledge, not upon the effect of Defendant's conduct on the Putative Class Members.

52. The statutory damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the Members of the Putative Class to individually redress effectively the wrongs done to them, as the TCPA has no attorney's fee shifting provision. Even if the Members of the proposed Putative Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court

to resolve numerous individual claims based upon a single set of proof in just one case.

53. Class certification is appropriate because Defendant has acted on grounds generally applicable to the proposed Putative Class, making appropriate equitable injunctive relief with respect to Plaintiff and the proposed Putative Class Members. Fed. R. Civ. P. 23(b)(2).

54. <u>Injunctive and Declaratory Relief Appropriate.</u> Defendant has acted on grounds generally applicable to the Putative Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Putative Class appropriate on a class wide basis. Moreover, on information and belief, and based on her experience, Plaintiff alleges that the calls made by Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION
### COUNT I
**Violation of 47 C.F.R. § 64.1200(D)(3)**
**Failure to Honor Internal Do-Not-Call List Requests**

55. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

56. Plaintiff and the Internal Do-Not-Call List Putative Class each asked Defendant to stop making telemarketing calls to them.

57. In violation of 47 C.F.R. § 64.1200(d)(3), Defendant continued to make telemarketing calls to Plaintiff and the Internal Do-Not-Call List Putative Class after they were listed on Defendant' Internal Do-Not-Call List.

58. Plaintiff and the Internal Do-Not-Call List Putative Class received more than one (1) such call in a twelve (12) month period.

59. Pursuant to 47 U.S.C. § 227(c)(5), Plaintiff and each Internal Do-Not-Call List Putative Class Member is entitled to recover from Defendant $500.00 in statutory damages for each such violation. In the event that Defendant are found to have knowingly or willfully violated the TCPA, this Court may, in its discretion, increase the amount of statutory damages to not more than $1,500.00 for each such violation with Plaintiff and each Internal Do-Not-Call List Putative Class Member.

60. "Every intentional tort invokes a species of bad faith that entitles a person wronged to recover the expenses of litigation including attorney fees." *Tyler v. Lincoln*, 272 Ga. 118, 527 S.E.2d 180 (Ga. 2000).

61. "There is no requirement that a viable state law claim exists in order for the jury to award litigation expenses pursuant to OCGA § 13-6-11. Rather, 'OCGA § 13-6-11 constitutes a vehicle for the collection of attorney fees' even when only a federal law claim for damages is submitted to the finder of fact." *Fulton County v. Legacy Inv. Group, LLC*, 296 Ga.App. 822, 827 (2009).

62. USA Carship has acted in bad faith, been stubbornly litigious and/or caused Plaintiff unnecessary trouble and expense, and Plaintiff requests an award of

the expenses of litigation, including a reasonable attorney's fees, pursuant to OCGA § 13-6-11.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and as a representative of all other persons similarly situated, prays for judgment against Defendant, awarding relief as follows:

a. Certifying the proposed Internal Do-Not Class List Class under Fed. R. Civ. P. 23 and appointing Plaintiff and her counsel to represent the Internal Do-Not-Call List Class;

b. Statutory damages as provided for under 47 U.S.C. § 227(c)(5), trebled as may be appropriate;

c. A permanent injunction restraining Defendants from making, or having made on their behalf, any additional non-emergency calls to residential landlines that are on the Internal Do-Not-Call List without first obtaining the prior express written consent of the called party;

d. Pre-judgment interest from the date of filing this suit;

e. A reasonable attorney's fee to be paid out of any common fund created by virtue of this litigation;

f. All costs of this proceeding; and

g. All general, special, and equitable relief to which Plaintiff and the respective Members of the Internal Do-Not-Call List Class are entitled to by law.

                                        Respectfully submitted,

Date:  December 28, 2023        /s/ *Justin T. Holcombe*
                                        Justin T. Holcombe (Ga Bar No. 552100)
                                        **Skaar & Feagle LLP**
                                        133 Mirramont Lake Drive
                                        Woodstock, GA 30189
                                        Telephone: (70) 427-5600
                                        Fax: (404) 601-1855
                                        *jholcombe@skaarandfeagle.com*

                                        Philip J. Krzeski*
                                        **CHESTNUT CAMBRONNE PA**
                                        100 Washington Avenue South, 1700
                                        Minneapolis, MN 55401
                                        Telephone: (612) 339-7300
                                        Fax: (952) 336-2940
                                        *pkrzeski@chestnutcambronne.com*

                                        Joseph M. Lyon*
                                        Kevin M. Cox*
                                        **THE LYON FIRM**
                                        2754 Erie Avenue
                                        Cincinnati, OH 45208
                                        Phone: (513) 381-2333
                                        Fax: (513) 766-9011
                                        *jlyon@thelyonfirm.com*
                                        *kcox@thelyonfirm.com*

                                        *\*pro hac vice forthcoming*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial by the maximum number of persons permitted by law on all issues herein triable to a jury.

/s/ *Justin T. Holcombe*
Justin T. Holcombe (Ga Bar No. 552100)
**Skaar & Feagle LLP**
133 Mirramont Lake Drive
Woodstock, GA 30189
Telephone: (70) 427-5600
Fax: (404) 601-1855
*jholcombe@skaarandfeagle.com*